AUTHORIZED AND APPROVED/DATE: s/Drew E. Davis 8/28/26

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

FILED

4:11 pm, Aug 28, 2026

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA
By: LDC, Deputy Clerk

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
a Black in color Android Cellular Telephone Associated to Phone Number: 610-564-9084, IMSI: 310260397036014, currently located at the Bureau of Alcohol, Tobacco, Firearms and Explosives within the Western District of Oklahoma

Case No. MJ-26- 432 -STE

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 933 | Firearm Trafficking |
| 18 U.S.C. § 922(a)(1)(A) | Engaging in the Business of Dealing Firearms without a License |
| 18 U.S.C. § 923(a) | |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

LUCAS KECK, Special Agent ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 28, 2026

[signature: Shon T. Erwin]
*Judge's signature*

City and state: Oklahoma City, Oklahoma

SHON T. ERWIN, U.S. MAGISTRATE JUDGE
*Printed name and title*

Print | Save As... | Attach | Reset

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **A BLACK IN COLOR ANDROID CELLULAR TELEPHONE ASSOCIATED TO PHONE NUMBER 610-564-9084, IMSI # 310260397036014, LOCATED WITHIN THE WESTERN DISTRICT OF OKLAHOMA** | **Case No. M-26-** 432 **-STE** |

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Lucas Keck, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), having been duly sworn, depose and state as follows:

**INTRODUCTION AND OFFICER BACKGROUND**

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I am currently assigned to the ATF Muskogee Field Office in the Eastern Judicial District of Oklahoma. I am an investigative officer, or law enforcement officer, of the United States of America within the meaning of Title 18, United States Code, Section 2510(7), that is an officer of the United States who is empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18. I have been employed by ATF since 2015, and prior to my employment with ATF I was a Special Agent with the United States Secret Service (USSS) from 2009 through 2015.

2. During my employment as an ATF Special Agent, I have received specialized training regarding, and have personally participated in, various types of investigative activity. This includes, but is not limited to, the following: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants and other individuals who have knowledge concerning violations of federal firearms laws; (c) arson investigations; (d) homicide investigations; (e) undercover operations; (f) the execution of search warrants; (g) the consensual monitoring and recording of conversations; (h) electronic surveillance through the use of pen registers and trap and trace devices; (i) the court-authorized interception of both wire and electronic communications (i.e., Title III wiretaps); and (j) the handling and maintenance of evidence.

3. During my employment with the USSS, I conducted and participated in investigations for counterfeit currency, to include purchasing counterfeit currency with confidential informants and undercover agents, identity theft investigations, credit card fraud, and bank fraud in both state and federal courts in the Southern District of Texas. During my employment with ATF and with the USSS, I have assisted other agencies and law enforcement, including the Drug Enforcement Administration (DEA), with investigations regarding firearms and narcotics.

4. I have conducted multiple investigations targeting individuals engaged in trafficking firearms, in violation of 18 U.S.C. § 933, and individuals

engaged in dealing firearms without a license, in violation of 18 U.S.C. §§ 922(a)(1)(A) and 923(a). I have experience in the methods used in firearm trafficking investigations, including but not limited to, debriefing cooperating witnesses and cooperating sources, the preparation and execution of search warrants, and making arrests. In light of this experience, I know the following:

a. I am aware of the methods in which firearm traffickers and unlicensed firearm dealers often use electronic devices, including computers, tablets, cell phones, and other electronic storage devices, to communicate and coordinate firearm transactions and execute electronic transactions which can, in turn, create automatic records and documentation of the unlawful firearm transactions;

b. I am aware that individuals engaged in trafficking firearms and dealing without a license often use electronic devices to track and document financial transactions;

c. I am aware that individuals engaged in trafficking firearms and dealing without a license will frequently keep contact information and other evidence related to the unlawful sales of firearms on cellular phones, computers, tablets, and other storage devices that they often keep on or near their person;

d. I am also aware that individuals engaged in trafficking firearms and dealing without a license will often use cellular phones to further their financial businesses using digital communication, including, but not limited to, e-mail and instant messaging; and

e. I am aware that individuals engaged in trafficking firearms and dealing without a license will often use electronic devices to communicate with the individuals for whom they are transporting firearms, including coordinating addresses for pickups and deliveries, communicating about status of the transportation, especially over long distances, and communicating to confirm successful deliveries.

5. This Affidavit is based upon my personal investigation and upon information received from other law enforcement officers and agents and may not be inclusive of all evidence or information available or of all facts known to me relative to this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

6. I make this Affidavit in support of an application for a search warrant authorizing the examination of one cellular electronic device: a black in color Android cellular telephone associated to phone number **610-564-9084** and **IMSI# 310260397036014**, referred to as the **SUBJECT DEVICE** and further described in **Attachment A**, which is located at the ATF Oklahoma City Field Office within the Western District of Oklahoma, for evidence of firearm trafficking, in violation of 18 U.S.C. § 933, and engaging in the business of dealing firearms without a license, in violation of 18 U.S.C. §§ 922(a)(1)(A) and 923(a). The applied-for warrant would authorize the forensic examination of the **SUBJECT DEVICE** for the purpose of identifying and seizing electronically stored data specifically described in **Attachment B**.

## PROBABLE CAUSE

*Cheryl Greaser Purchases Four (4) Firearms from Firearm Dealer*

7. On or about June 16, 2025, Cheryl Greaser purchased four firearms—an FN M249S Para and three AK-style firearms—from Big Dollar Pawn, a federal firearm licensee (FFL) in Okmulgee, Oklahoma.




Pictured above is an FN M249S Para from the manufacturer's website. *See* https://fnamerica.com/products/rifles/fn-m249s-para/.

8. Based on my training and experience, I know that the FN M249S Para is a semi-automatic version of the M249 Squad Automatic Weapon (SAW) light machine gun used by the United States military. Further, I know that

the FN M249S Para can be converted to belt-fed fully automatic firearm making these weapons extremely valuable to criminal organizations like Mexican cartels.

9. On or about March 6, 2026, I interviewed an employee of Big Dollar Pawn. The employee said that the shop had advertised an FN M249S for sale on Armslist.com, an online firearms classified service. Cheryl Greaser responded to the ad for the firearm by telephone. When Ms. Greaser was informed that the firearm in the advertisement had already been sold, she agreed to travel to the shop and pay for another one to be ordered.

10. According to the employee, sometime after that phone call, Cheryl Greaser arrived at the store and paid $10,800 in cash to purchase an FN M249S Para. The employee remembered that Ms. Greaser had a bag of cash, and that there was a large amount of cash left in the bag after she paid for the gun. The FN M249S Para was ordered, and Ms. Greaser was told she would be called when the firearm arrived.

11. According to the employee, when the FN M249S Para arrived at the shop several days later, Cheryl Greaser returned and picked up the firearm. The employee could not remember if Ms. Greaser purchased the additional three (3) AK-style firearms at the time she paid for the FN M249S Para, or when she picked it up. The employee recalled that a male may have been with Ms. Greaser when she came back to pick up the gun.

*ATF Agents Interview Cheryl and Jason Greaser*

12. On November 3, 2025, Cheryl Greaser, and her son, **J. GREASER**, were interviewed by ATF agents regarding the June 16, 2025, purchase of the FN M249S Para and three AK-style firearms. **J. GREASER** claimed Cheryl Greaser had fired a similar gun while in Las Vegas and wanted to buy one. After purchasing the FN M249S Para, they said they had sold it at a gun show. Cheryl Greaser did not know who had purchased the firearm. **J. GREASER** and Cheryl Greaser said the AK-style firearms were a good deal, and they knew they could sell them at a gun show in Oklahoma City for a profit. Cheryl Greaser and **J. GREASER** said they sold the AK-style firearms at a gun show, and they did not know who purchased them.

13. Cheryl Greaser and **J. GREASER** were then informed by the interviewing ATF agents that purchasing firearms for the purpose of reselling them for profit—without a license to deal firearms—was a federal crime. Cheryl Greaser and **J. GREASER** were told that by checking "yes" on the ATF Form 4473 where the form asked if they were buying the firearm for themselves, they were certifying that they intended to keep the firearm, rather than buy it with the intent to resell it for profit. ATF agents further explained that firearms like the FN M249S are often trafficked to Mexican cartels.

14. Cheryl Greaser and **J. GREASER** both denied buying or selling other firearms. Cheryl Greaser was informed that she would receive an ATF

Warning Letter explaining why it was illegal to buy and sell firearms without a license. Both Cheryl Greaser and **J. GREASER** seemed to understand the situation and did not ask ATF agents additional questions.

*Two Pistols are Recovered in Mexico*

15. On December 24, 2025, more than one month *after* agents had interviewed both Cheryl Greaser and **J. GREASER**, Gunner Michael CASEY (CASEY) purchased five (5) Lorcin .380 caliber pistols at Roadrunner Gun and Pawn, a federally licensed gun dealer located in Wagoner, Oklahoma.

16. On February 20, 2026, I was notified that two of the pistols CASEY purchased had been recovered in Ciudad Juarez, Mexico, on January 27, 2026, 34 days after CASEY had purchased them in Wagoner, Oklahoma.[1]

17. On February 24, 2026, CASEY told me that he purchased the five pistols on Gunbroker.com, an online auction service, as part of a packaged deal for approximately $300.00 for all five pistols. After receiving the pistols at Roadrunner Gun and Pawn, he gave one to a relative as a gift and decided to sell one back to the pawn shop. I was able to confirm that CASEY had sold one Lorcin pistol back to the FFL.

---

[1] The time from the date of purchase to the date of recovery is commonly referred to as a "Time to Crime" (TTC).

18. CASEY said he had sold the remaining three pistols to a white male he met in Checotah, Oklahoma, on January 10, 2026, after advertising the pistols on OKShooters.com.[2] CASEY showed me messages he had exchanged with the purchaser—username "**jjgreaser**"—via OKShooters.com the day before the sale on January 9, 2026. In those messages, **jjgreaser** provided a cellular telephone number of **610-564-9084**.

19. Based on the messages and CASEY's information, I determined that the two pistols that had been recovered in Ciudad Juarez, Mexico, had an *actual* Time to Crime (TTC) of 17 days, rather than 34 days.

a. This meant that the two pistols traveled more than 800 miles, were transported across the United States-Mexico border, and fell into the hands of individuals who encountered Mexican law enforcement all within 17 days.

20. Based on my training and experience, I know that firearms recovered in Mexico with short TTC windows often indicate that the firearm purchaser either directly trafficked the firearms themselves or were in close proximity to the firearm trafficker.

21. An online query for the telephone number provided by user **jjgreaser** showed **J. GREASER** and a potential address of **12720 Briar Hollow Lane, Oklahoma City, Oklahoma**. This location is approximately

[2] The undersigned affiant learned OKShooters.com is an online website that hosts forums and classified ads for users.

119 miles, one hour and forty-five minutes from Checotah, Oklahoma. Based on my experience, I know it is uncommon for a person to drive almost two hours to purchase three inexpensive firearms of the same brand, model, and caliber.

22. I queried ATF investigative systems for **12720 Briar Hollow Lane, Oklahoma City, Oklahoma**, and discovered the prior ATF case associated with this address involving Cheryl Greaser, a female in her seventies, purchasing the FN M249S Para on June 16, 2025.

23. On or about March 2, 2026, I discovered **J. GREASER** was currently prohibited from possessing firearms. Additionally, I learned that on August 13, 2025, **J. GREASER** attempted to purchase an AK-style firearm from Blue Collar Tactical, an FFL in the Oklahoma City area. **J. GREASER** was denied that purchase, however, based on his NICs background check.

24. Documents related to the NICs denial show **J. GREASER** was denied purchasing the firearm because he was considered a fugitive from justice:

a. **J. GREASER** was arrested or ticketed in Garza County, Texas, on September 20, 2023, for Dangerous Drugs, a felony level offense. Records show **J. GREASER** posted a $7,500.00 bond. **J. GREASER** appears to have an arrest warrant issued for this offense for failure to appear, however, the warrant is for in-state extradition only.

b. ATF inquiries with the Garza County Sheriff's Office at the time of the firearms purchase denial show Garza County believes **J. GREASER** would be aware of his criminal obligation related to this charge.

25. Based on my training and experience, I know that individuals who are prohibited from receiving firearms often attempt to acquire firearms via private sales because it is less likely that they will be subjected to a background check. Further, I know that it is common for people who are prohibited from purchasing firearms to have others straw purchase firearms on their behalf.

26. On March 13, 2026, I received a response to a federal search warrant issued to the website OKShooters.com for information related to username **jjgreaser**. Although I did not receive information identifying the actual name of **jjgreaser**, OKShooters.com supplied a date of birth for user **jjgreaser** which matched the date of birth for **J. GREASER**.

27. Additionally, I found a post by **jjgreaser** dated July 1, 2025, stating that **jjgreaser** was new to OKShooters.com but was well established on Armslist.com.[3] I know Armslist.com to be an online classified advertisement website for firearms that requires a paid subscription to access contact information on posted firearms and communicate with sellers or buyers.

---

[3] On July 2, 2025, **jjgreaser** posted a "Want to Buy" advertisement on OKShooters.com for a .50 BMG caliber firearm or cheaper AK-style firearms in the Oklahoma City area but was willing to travel. This advertisement was posted *after* Cheryl Greaser had purchased the FN M249S Para and three (3) AK-style firearms in June 2025. Based on my training and experience, I know that .50 BMG caliber firearms are extremely powerful weapons and are commonly sought after by Mexican cartels.

28. On April 9, 2026, I received a response to a federal grand jury subpoena issued to Armslist.com for information regarding **J. GREASER**. Armslist.com has an account established for **J. GREASER**, with email jkgreaser@gmail.com, an address of **12720 Briar Hollow Lane, Oklahoma City, Oklahoma, 73170**, and phone number **610-564-9084**. This phone number matched the phone number "**jjgreaser**" provided CASEY on or about January 9, 2026. The Armslist.com account is a paid subscription that **J. GREASER** has had since January 1, 2021.

29. On April 1, 2026, I queried ATF reports related to firearms recoveries for **Jason J. GREASER** and Cheryl Greaser. I discovered that one of the three AK-style firearms Cheryl Greaser purchased on June 16, 2025, was recovered in Celaya, GJ, Mexico, on December 18, 2025—a TTC of 185 days.

30. On June 11, 2026, I attempted to contact **J. GREASER** at **12720 Briar Hollow Lane, Oklahoma City, Oklahoma**, after observing a vehicle registered to **J. GREASER** parked in the driveway of this address on June 10, 2026, and June 11, 2026. I made contact shortly after 8:00 am with Cheryl Greaser at the front door. She stated that **J. GREASER** was out of state on a business trip, and that **J. GREASER** would be flying back to Oklahoma City that evening. When Cheryl Greaser asked why I wanted to speak with **J. GREASER**, I explained it was a question about some firearms.

Cheryl Greaser quickly responded that she was the one who had purchased the firearms and suggested I contact and communicate with **J. GREASER** by text message with any questions. I believe Cheryl Greaser was referring to the four firearms purchased in Okmulgee, Oklahoma, the previous year. I left a business card with my cellular number for **J. GREASER** to contact me once he returned.

31. On August 5, 2026, United States Magistrate Judge Suzanne Mitchell of the Western District of Oklahoma issued a search warrant authorizing the pinging of the **SUBJECT DEVICE**. *See* W.D.O.K. Case Number M-26-395-SM.

32. On August 21, 2026, United States Magistrate Judge Suzanne Mitchell of the Western District of Oklahoma issued a search and seizure warrant authorizing the search of **J. GREASER** and his vehicle to seize the **SUBJECT DEVICE**. *See* W.D.O.K. Case Number M-26-419-SM.

33. On August 27, 2026, law enforcement encountered **J. GREASER** within the Western District of Oklahoma and seized the **SUBJECT DEVICE** from **J. GREASER's** person. The **SUBJECT DEVICE** was subsequently transported to the ATF Field Office in Oklahoma City, Oklahoma, where it remains.

34. Based on my investigation, I believe Cheryl Greaser was acquiring firearms on behalf of **J. GREASER**. I further believe that **J. GREASER**

continued to buy firearms for the purpose of reselling them for profit without a federal firearms license despite ATF agents explaining to him that he was committing a federal crime to do so.

35. Based on my training and experience, I believe that the short TTC windows for multiple firearms that have been purchased by the Greasers suggests that they are either directly involved in trafficking firearms to Mexico, or they are closely associated with individuals involved in such activity.

36. Based on my investigation, training, and experience, I believe **J. GREASER** is using the **SUBJECT DEVICE** to log into websites like Armslist.com and OKShooters.com to coordinate the purchase, sale, and transportation of firearms. Additionally, based on my investigation, I believe that **J. GREASER** is using the **SUBJECT DEVICE** to further coordinate the purchase, sale, and delivery of firearms to people who do not use these websites.

37. Based on my training and experience, I know that those engaged in firearm trafficking and those engaged in the business of dealing firearms without a license often use cellular devices to plan and coordinate the purchase, sale, and transportation of firearms with others. These cellular devices often contain contact lists, call logs, messages, photographs, videos, and other notes which relate to firearms.

38. Based on my training and experience, I know that those using cellular devices to engage in criminal activity often keep the devices on their person, in their residence, or in their vehicles so as to maintain easy access to those devices.

39. Accordingly, based on the aforementioned facts, there is probable cause to believe that the **SUBJECT DEVICE** will contain evidence of federal crimes, namely, firearm trafficking, in violation of 18 U.S.C. § 933, and engaging in the business of dealing firearms without a license, in violation of 18 U.S.C. §§ 922(a)(1)(A) and 923(a), within the Western District of Oklahoma, and elsewhere.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

40. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Cellular phones, and specifically iPhones, have the ability to: serve as a wireless telephone, digital camera, portable media player, and GPS navigation device, access the Internet, and use manufacturer installed, as well as downloaded, applications to conduct basic computing and data services. Similarly, things that have been viewed via the Internet are typically stored for some period of time on iPhones. This information can sometimes be recovered with forensic tools.

41. There is probable cause to believe that things that were once stored on the **SUBJECT DEVICE** may still be stored there, at least for the following reasons:

c. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months, or even years, after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer or cellular device, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

d. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer or cellular phone's operating system may also keep a record of deleted data in a "swap" or "recovery."

e. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

42. *Forensic evidence*. As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **SUBJECT DEVICE** was used, the purpose of their use, who used them, and when. There

is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICE** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. File systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This “user attribution” evidence is analogous to the search for “indicia of occupancy” while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how that particular device behaves.

Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

43. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

44. *Manner of execution*. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

45. In light of the foregoing, I submit that this Affidavit supports probable cause for a search warrant authorizing the search of the **SUBJECT DEVICE** described in **Attachment A** to seize the items described in **Attachment B**.

Respectfully submitted,

LUCAS KECK
Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives (ATF)

Sworn and subscribed to before me this 28th day of August 2026.

SHON T. ERWIN
United States Magistrate Judge
Western District of Oklahoma

## ATTACHMENT A

The property to be searched is black in color Android cellular telephone, phone number **610-564-9084** and **IMSI# 310260397036014** (hereinafter **SUBJECT DEVICE**). The **SUBJECT DEVICE** is currently located at the ATF Oklahoma City Field Office within the Western District of Oklahoma.

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

1. Records on the **SUBJECT DEVICE**, described in **Attachment A**, that relate to violations of 18 U.S.C. §§ 933 and 18 U.S.C. §§ 922(a)(1)(A) and 923(a) during the period of **May 15, 2025, through the present**, such as:

a. information, notes, and location data related to the acquisition, sale, or transportation of firearms;

b. audio recordings, images, or videos related to firearms;

c. information related to the sources of firearms and buyers of firearms, to include: names, addresses, phone numbers, images, videos, audio recordings, and any other identifying information;

d. communications with buyers, sellers, co-conspirators, or others regarding the acquisition, possession, transportation, or distribution of firearms whether such communications be via text messaging, audio messaging, video messaging, email, websites, or communication through an application stored on the **SUBJECT DEVICE**;

e. records and notes detailing the types, quantity, and prices of firearms as well as dates, places, and payment amounts of specific firearm-related transactions;

f. internet usage history, package tracking, electronic or internet mail communications, and electronic payment receipts related to the acquisition, sale, or transportation of firearms;

g. bank records, checks, credit card bills, account information, and other financial records connected to the purchase or sale of firearms:

h. evidence of user attribution showing who used or owned the **SUBJECT DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,

saved usernames and passwords, associated accounts, documents, and browsing history:

1. records of Internet Protocol addresses used,

2. records of Internet activity, including firewall logs, caches, browser history and cookies, “bookmarked” or “favorite” web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses, and

3. photographs, logs, phonebooks, saved usernames and passwords, and documents.

As used above, the terms “records” and “information” include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored on the **SUBJECT DEVICE**.